UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


SCOTTSDALE INSURANCE COMPANY,

     Plaintiff

v.                         CIVIL ACTION NO. 2:05-0064

PAR INDUSTRIAL CORPORATION and
ANTHONY CRANE RENTAL, L.P. d/b/a
MAXIM CRANE WORKS,

     Defendants


<u>MEMORANDUM OPINION AND ORDER</u>


        Pending are cross motions for summary judgment by two of the parties.  Plaintiff Scottsdale Insurance Company's ("Scottsdale") motion was filed October 25, 2005.  Defendant Par Industrial Corporation's ("PAC") motion was filed October 26, 2005.[1]  As will be seen, Scottsdale issued to PAC a Commercial General Liability Policy.

---

      [1]The parties had previously advised the court in January 2006 of their intention to proceed to mediation.  The mediation was originally scheduled for March 2006.  On the eve of the mediation, however, counsel for PAC determined that further discovery was necessary in the companion state action discussed herein.  The court has awaited the outcome of that discovery and the mediation to follow.  As of May 2006, however, the court was informed that discovery was still ongoing.  The court concludes the matter is now ripe for disposition.

I.


Scottsdale is an Arizona citizen.  (Compl. ¶ 1).[2]  PAC is a West Virginia citizen.  (Id. ¶ 2).  Defendant Anthony Crane Rental, L.P. d/b/a Maxim Crane Works ("Maxim") is a Pennsylvania citizen.  (Id. ¶ 3).

According to the underlying complaint in the pending state court action, PAC hired Maxim from August 4 to 7, 2004, to perform crane-operation services.  (Underlying compl. ¶ 4 and Aff. of John Merrill, ex. 3, Maxim's Resp.).  However, according to a document referred to as a "service lease[,]" submitted by Maxim and purporting to control the PAC/Maxim arrangement, PAC is listed as both a "Lessee" and as the "Customer (Lessee)." (Underlying compl., ex. A).  Maxim is identified as the "Lessor." (Id.)  The "Terms and Conditions" of the document provide as follows:

> Control, Supervision and Operation of Equipment, Operators and/or Crew:  Lessee agrees that the

_____

[2]In the discussion that follows, the court will cite to two different complaints.  The first complaint is the initial pleading in this action.  It is referred to as "the complaint." The second complaint is the operative pleading in the underlying state action pending in the Circuit Court of Kanawha County.  It is referenced as the "underlying complaint."

>Equipment and all persons operating or maintaining such
>Equipment including Lessor's employees, agents or
>independent contractors <u>are under Lessee's exclusive
>jurisdiction, possession, supervision and control</u>.
>Lessee shall provide competent and experienced
>personnel to supervise and direct the operation of the
>Equipment.

(<u>Id.</u> (emphasis in original)).

As explained further below, Scottsdale contended originally that the PAC/Maxim arrangement was governed not by the service lease but instead by a document referred to as a "short term rental agreement." (Compl. ¶ 16). The short term rental agreement was provided to Scottsdale by PAC's insurance agent, Ramsey. Scottsdale now appears to contend the service lease and the short term rental agreement are materially identical.[3] As will be shown, however, PAC contends that neither of these two documents control its relationship with Maxim for purposes of this action.

---

[3]Scottsdale also contends both the service lease and the Short Term Rental Agreement contain integration clauses that would prevent PAC from varying from the terms of the applicable written agreement. All parties appear to concede the potentially applicable written agreements in this case are controlled by Pennsylvania law. In that regard, the court observes the recognition by both the United States Court of Appeals for the Third Circuit and the Supreme Court of Pennsylvania that the parol evidence rule does not redound to the benefit of non-parties to the contract. <u>See</u> <u>Russell v. Heiner</u>, 53 F.2d 1009, 1010 (3rd Cir. 1931) (citing <u>Roberts v. Cauffiel</u>, 283 Pa. 64, 68, 128 A. 670, 671 (Pa. 1925)).

3

According to the affidavit of John Merrill, Maxim's Eastern Regional Safety Manager, Maxim transported the crane to PAC's job site.  (Merrill Aff, Maxim's Resp., ex. 3).  Maxim additionally provided the crane operator and oiler, both of whom, according to Maxim, were working at PAC's direction.  (Id. ¶ 4). On August 6, 2004, the crane was being used to remove a steel A frame support.  (Underlying compl. ¶ 5).  PAC performed the rigging and prep work to attach the A frame to the crane for removal.  (Id. ¶ 6).  Maxim contends PAC's owner, John Pizzuto, advised Maxim's crane operator that the load was only 16,000 pounds.  (Id. ¶ 7).  Maxim contends that although its operator wanted a different rigging for the crane, Pizzuto assured him the rigging placement was "fine . . . ."  (Id. ¶ 9).  PAC denies both allegations.

The crane operator began putting the load on the crane. When the crane reached 20,000 pounds of pull, the operator told Pizzuto, who then responded to the operator to continue pulling the load.  (Id. ¶ 11).  A short time later, the load started to pull away from the crane, causing the crane to tip over and sustain damages resulting in its total loss.  (Id. ¶¶ 12-13). The A frame ultimately weighed in at over 29,000 pounds.  (Id. ¶ 14).

4

On August 16, 2004, Bloss & Dillard, Inc. ("Bloss"), the insurance broker alleged to have sold the subject insurance policy through Ramsey to PAC, provided Scottsdale with an August 13, 2004, letter from counsel for Maxim and a claim against PAC. (Compl. ¶ 10).  The claim stated, <u>inter alia</u>, "RENTED CRANE WAS HEAVILY DAMAGED."  (<u>Id.</u>, ex. C at 1).  Maxim sought costs for repairs to the damaged crane.  One portion of the claim states "Crane operator worked for crane company and was their operator." (Compl. ¶ 12).  On August 19, 2004, Scottsdale advised PAC that it would deny coverage.  (<u>Id.</u> ¶ 14).  On October 19, 2004, PAC's counsel responded to the denial of coverage stating, <u>inter alia</u>, as follows:

> [PAC] has been in business for many years doing demolition work.  When it needs additional equipment to perform this demolition work, it will either rent the equipment from an entity such as Maxim or it will hire Maxim . . . to have Maxim's employees operate Maxim's equipment in assistance of the demolition.  In the latter role, Maxim operates as a subcontractor as opposed to [PAC] renting Maxim's equipment.  That was the situation on this project.

(Compl. ex. E at 2).

After receiving this response from PAC, Scottsdale requested from Maxim and received the "short term rental agreement" between Maxim and PAC.  (<u>Id.</u> ¶ 16).  As represented by Scottsdale, the "Terms and Conditions" specified in the short

5

term rental agreement appear to be materially identical to the "Terms and Conditions" in the service lease previously noted.

On February 8, 2005, Maxim instituted the underlying action against PAC in the Circuit Court of Kanawha County. (Underlying compl. at 1).  The two-count complaint alleges negligence in count I, based upon PAC's putative careless "supervision and operation[] of the job . . . ."  (Id. ¶¶ 18-20). Count II alleges breach of contract, alleging numerous violations of the "service lease . . . ."  (Id. ¶¶ 22-27).  By way of a third-party complaint, PAC added Ramsey, Bloss, and Scottsdale. In sum, PAC alleges the third-party defendants failed to properly underwrite the risk of loss presented by its operations, along with engaging in both fraud and common-law bad faith.

On January 21, 2005, Scottsdale instituted this action by filing a complaint for declaratory judgment.[4]  Scottsdale

_____

[4]In a December 22, 2005, show cause order, the court noted some confusion concerning Scottsdale's citizenship.  There is a Scottsdale Insurance Company listed as a Delaware corporation at that state's corporation website.  There is an identical listing for that same entity in the Ohio corporation registry.  This point is significant inasmuch as Maxim appears to have a Delaware connection based upon that defendant's disclosure statement filed March 11, 2005.  (Disc. Stmt. ¶ 2 ("The General Partner is Maxim Crane Works, LLC, A Delaware limited liability company.").
In responding to the show cause order, Scottsdale has satisfied the court that it qualifies only for Ohio citizenship. It appears that Scottsdale came into being as the result of a

issued to PAC a Commercial General Liability Policy (hereinafter

"the policy") covering the time frame in which the crane mishap

occurred.    (Compl. ¶ 6).  The policy is subject to a Damage to

Property Exclusion which provides as follows:

> "Property damage" to:
>
>> (1)  Property you own, rent, or occupy,
>>      including any costs or expenses incurred
>>      by you, or any other person,
>>      organization or entity, for repair,
>>      replacement, enhancement, restoration or
>>      maintenance of such property for any
>>      reason, including prevention of injury
>>      to a person or damage to another's
>>      property;
>>
>> (2)  . . . .
>>
>> (3)  Property loaned to you;
>>
>> (4)  Personal property in the care, custody
>>      or control of the insured.

(Ex. A, Pl.'s Mot. Summ. J. at (j)(1), (3) and (4)).

Scottsdale's complaint alleges as follows:

> Because [PAC] rented the crane from MAXIM and had
> exclusive control over the crane, coverage is not
> available for MAXIM's claim against [PAC] for damage to
> the crane based on Paragraphs (1) and/or (4) of the
> Damage to Property Exclusion, which exclude coverage
> for damage to property rented to [PAC] and damage to
> property in [PAC]'s "care, custody or control."

(Compl. ¶ 20).

---

merger of the Delaware entity and the Ohio entity, with the Ohio
entity as the resultant lone survivor.  The court is thus vested
with diversity jurisdiction.

Pizzuto, in his affidavit attached to PAC's summary

judgment motion, contends as follows:

>    3.   In dealing with [Maxim], there are two different
>         ways by which [PAC] obtains equipment . . . .  The
>         first is through a "Bare Rental Agreement" whereby
>         [PAC] is responsible for picking up the equipment,
>         operating the equipment, fueling and maintaining
>         the equipment and insuring that there is property
>         insurance on the equipment.  The other means by
>         which [PAC] obtains equipment from [Maxim] is
>         through an "Operator Lease Agreement".  Under that
>         type of agreement, Anthony transports the
>         equipment to the job site, provides operators and
>         oilers for the equipment, fuels and maintains the
>         equipment and has property insurance on the
>         equipment.
>
>    4.   The equipment utilized on [PAC]'s job site . . .
>         [where the crane mishap occurred] was by way of an
>         Operator Lease Agreement and not on a Bare Rental
>         Agreement.
>
>    5.   Because this was not a Bare Rental Agreement,
>         [PAC] was not required to obtain insurance on the
>         equipment and did not do so.
>
>    6.   Because this was not a Bare Rental Agreement,
>         [PAC] did not operate the equipment and had no
>         control, custody or possession of the equipment
>         while it was at the job site.

(PAC's Mot. Summ. J., ex. B ¶¶ 3-6).  In PAC's estimation, the

operator lease agreement, now the third possible agreement

offered as the one controlling the PAC/Maxim relationship, is

"more comparable to a subcontractor arrangement than a rental

agreement. . . . because  [PAC] did not have possession, care,

custody or control of the equipment.  [PAC] neither operated the

equipment nor had the right to possess or operate it, and was not required to maintain it, transport it, or even fuel and oil it." (PAC's Memo. in Supp. at 8).

II.

A.   Governing Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id.  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S.

9

317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); Id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are

10

"drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).


B.   Analysis


        Discovery is ongoing in the underlying action.  At a minimum, however, there are three potential agreements that controlled the PAC/Maxim relationship, namely, the short term rental agreement, the service lease, or, as contended by PAC's Pizzuto, the operator lease agreement, which may have been oral or written.[5]

        In view of this uncertainty, the outcome of the state action will, at a minimum, inform the appropriate resolution of this action.  Indeed, should Maxim be deemed to have had a subcontractor relationship with PAC, such a finding would appear to eviscerate Scottsdale's reliance on the foregoing policy exclusions.  A failure to await further developments in the state action could thus result in inconsistent judgments between two tribunals faced with the same factual issue.  Further, it would be unwise from a comity standpoint for this court to resolve, as a matter of law, a key factual issue presented in the state action.

_____

        [5]A copy of the Operator Lease Agreement has not been submitted to the court for review.

Scottsdale attempts to overcome this concern by suggesting the central factual issue in these two competing actions is illusory.  Scottsdale notes well-settled West Virginia law providing as follows:

> As a general rule, "included in the consideration of whether [an] insurer has a duty to defend is whether the allegations in the complaint . . . are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance polic[y]."

West Virginia Fire & Cas. Co. v. Stanley, 216 W. Va. 40, 47, 602 S.E.2d 483, 490 (2004) (quoting syl. pt. 3, Bruceton Bank v. United States Fid. & Guar. Ins., 199 W. Va. 548, 486 S.E.2d 19 (1997)); see also Aetna Cas. & Sur. Co. v. Pitrolo, 176 W. Va. 190, 194, 342 S.E.2d 156, 160 (1986) ("an insurer's duty to defend is tested by whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy."); Corder v. William W. Smith Excavating Co., 210 W. Va. 110, 113, 556 S.E.2d 77, 80 (2001) ("in determining whether an insurer has a duty to defend, the determination is made based upon the allegations of the complaint.").

It is true, as Scottsdale contends, that the underlying complaint by Maxim alleges that PAC had "exclusive jurisdiction, possession, supervision and control" of the crane.  (Underlying compl. ¶ 22).  As noted, however, that same underlying complaint further contends that PAC "hired Maxim . . . to perform crane

12

operations services." (Underlying compl. ¶ 4). Reference to the underlying pleading, then, does not provide the clarity that Scottsdale suggests.

Based upon the foregoing discussion, the court ORDERS as follows:

1.  That Scottsdale's motion for summary judgment be, and it hereby is, denied without prejudice;

2.  That PAC's motion for summary judgment be, and it hereby is, denied without prejudice;

3.  That this action is stayed and retired to the inactive docket pending the outcome of the state action; and

4.  That the parties be, and they hereby are, directed to file quarterly status reports to advise of developments in the state action.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED:  July 19, 2006

John T. Copenhaver, Jr.
United States District Judge